NexRF or NexRF v. Playtika Ltd. and NexRF v. Aristocrat International Ltd. 2021, 2147, and 2219. Mr. LaDonne. Good morning, your honor. May it please the court, the district court's decision to grant a motion to dismiss under Rule 12b-6, finding the patents in suit and valid under 35 U.S.C. 101, was called as a matter of law. Four reasons support this conclusion. First, patent eligibility is an affirmative defense to an action for infringement, and Ninth Circuit law makes clear that affirmative defenses are not appropriate on a motion to dismiss. Moreover, Section 282b-2 of the statute makes clear that all defenses of the patent infringement shall be pleaded. Counsel, counsel, we may have rendered a lot of decisions on Rule 12b-6, but let me ask you, these claims deal with accessing a database, storing images, generating a game outcome, determining prizes. Are those all done by software? It's a combination of software and hardware, your honor. And are some of these actions new in this field, or are they all just computerizing what has been done in the past? Some of the elements are new, your honor, referring to the 229 patent, and that's Appendix 406. The pay table module that's associated with centralized gaming server is something that's new. And also, if you go to the 407 patent, which is Appendix... We have the claims. We have them. Okay, thank you, sir. That's 107, the transactional system is new. And the complaint makes that clear, your honor, if I could refer to Appendix 136. Paragraphs 5 through 7 of the complaint talk about the inventive concepts of the patents were unconventional. I'm in paragraph 5 now. So you're saying even if we find the claims abstract, they have something extra inventive, as the Supreme Court has told us to look for? That is correct, your honor. And that is best summarized in paragraphs 5 through 7 of Nexar's complaint. Notably, all of paragraph 5, which I won't read, but the last sentence of paragraph 5 talks about how the unconventional centralized server-based elements allowed for a stable, secure, flexible, engaging, multiplayer-compatible online gaming experience for the user while And then paragraph 6 and 7 talk about the pay table module, and 7 talks about the transaction system. And this first argument that I'm making is that the district court was required to accept these pleadings and these factual allegations and these pleadings as true. And the district court didn't do that. The district court didn't even address them in the underlying opinion. Mr. O'Donnell, we have a number of opinions where if the patent itself says something that's directly, plainly inconsistent or clashes with the assertions made in the complaint, then we follow the intrinsic evidence of the patent. Yes, your honor, I'm aware of that. But there's nothing on the base of the patents themselves that talk about that last sentence of paragraph 5 that I've just read into the record. And also, I would disagree with the defendant's position that each of the elements aren't that taught or admitted as prior art in each of the patents. Most notably, I'd like to in the independent claims in all of the other pacts, maybe using some different verbiage. But that pay table module is a unique inventive advancement in and of itself over the prior art. And there are three reasons that would support that, your honor. The prior art, you have to understand, it's 2001. And the way these games were played, there was a one-on-one relationship between a physical slot machine and a player. So if you had 10 physical slot machines, you had 10 players. Kerr comes along 2001, so 20 years ago when bandwidth was very limited, right? And he says, I'm going to scale this up so I can have one centralized remote server, right? And I can have 100,000 people play that. And there were advancements in the technology for Kerr to achieve that, one of which was the pay table module. And notably, in those prior art machines, those individual slot machines, they had individual pay tables, where the pay table module of Kerr's patents allows for functionality for multiple machines. Another point is the prior art pay tables, they resided on a physical machine. And Kerr's pay table module resides on a virtual machine that's associated with the centralized remote servers. And the last point is that the pay table module associates the game outcome comprised with images that have to be transmitted to a remote user device. And the statement by the defendants that that is taught or admitted to on the basis of patents is not correct. Counsel, are these patents expired? Yes, Your Honor. So when I go back to appendix 136 and paragraphs 5, 6, and 7, there's nothing in these paragraphs that contradict these statements in the patent to address the prior question that if there's a disconnect or a disagreement, you're going to rely on the intrinsic evidence of the patents. And I would also note that the transaction system is considered invented as well. So for that reason alone, that's my first argument, the district court didn't give these allegations their due, didn't accept them as due. That's true, as they were required to, as the court was required to do. And if the court would have done that, the motion to dismiss would have been denied on that basis alone, Your Honor. The second point I want to make is, or the second argument I want to make is, I also believe that the district court substantively erred when analyzing the patents under both the first and second steps of Alice. Let's just talk about the first step briefly. Under Alice step one, the question was, are the claims as a whole directed to an abstract idea? The district court concluded that the claims were all directed to the abstract idea of remotely playing a slot machine on a server. And that definition in and of itself is an error because the specification of the patents made clear that the games may include a plurality of different games and games types, and that's not restrictive of the invention. And for that, I'm referring to books 43, column nine, lines 59 through 61. So the Alice step one analysis stands in error for that reason alone. And then moving forward to the Alice step two analysis, it's the same argument that I just made before. I'm not going to rehash it with you, but if you look at paragraphs five, six, and seven of the complaint, again, which have to be accepted as true, and they don't contradict the teachings of the specification, there is an embedded concept here in this, in this, in these programs, in its order combinations that are sufficient to allow, to satisfy the second Alice. And, and we've cited these cases in our brief, we rely on BASCOM, we rely on COSMOTE, and our case stands on all four with those two cases. The third argument I wanted to make, Your Honor, talks about the district court's analysis of only two claims, that is claim one 229 patent, claim 1407 patent, as being representative of all the claims. By doing that, the district court violated the patent statute, in my opinion. The, one of the touchstones of this, this analysis is on appendix 410, footnote 10, where NXRF, in its brief, in the footnotes, it said NXRF does not oppose treating the 229 patent as representative of the 454 and 406 patents for purposes of this 101 analysis. It is true that NXRF made that representation, but it's, let's look at what it doesn't say. That footnote does never, in that footnote, NXRF never agreed that claim one of the 229 patent is representative of all of the claims of the 229 patent. NXRF never agreed that claim one of the 229 patent is representative of all the claims of the 454 and 406 patents. And importantly, with respect to the 407 patent, NXRF never agreed that claim one of the 407 patent is representative of all the remaining claims of the 407 patent. So there's no basis to say that NXRF conceded to this representative claim analysis by the district court. And importantly, as we cite in our brief, section 282A provides that each claim of a patent shall be presumed valid and independently of the validity of the other claims. And section 288 of the statute talks about how whenever one claim of a patent is invalid, an action may be maintained for infringement of a claim of a patent which may be valid. Counselor, you're well into your rebuttal time. You can continue or save it. I'm going to just continue for a minute to finish my comments on this point, and then I'll save my time, Your Honor. Thank you. You know, so the defendants, even if NXRF even didn't oppose this motion to dismiss, the district court could not have validated all of these claims unless it found invalidity on a claim-by-claim basis. And we cite the Mortier case and the Martinez case in our briefs. And so I will rest there for now, and I'll save the rest of my time for rebuttal. Thank you, Your Honor. Fine, Ms. Honor. You may take off your mask unless you don't wish to. Thank you very much. Yes, I would love to. Thank you. Good morning. Good morning. Almost afternoon. Your Honors, may it please the Court, this case is a straightforward example of patents that issued prior to 2012 that cannot withstand scrutiny after Mayo and Alice. And regarding the substantive analysis of 101, I think that the arguments NXRF has made here today reveal everything you need to know, which is at Alice Step 1, they say the district court got it wrong because their abstract idea was too narrow, and that rather than being limited to slot machines on a server, it should cover any types of games on a server. What about the pay table module and the transactional system? So that is actually their second problem, which is when asked for an inventive concept, he said, yes, there is one. Look at the complaint. And the arguments that you just heard from him all focus on the complaint. And he said specifically to this court that there is nothing, to the question that was asked, there is nothing in the patents about the sentence that he read, stable, secure, flexible, engaging, multiplayer, compatible, online. That sentence in Appendix 136 in the complaint, he couldn't point you to where in the patent it actually explains that that happens. So what he did was, in answer to your question, he talked about specific claim components to argue that those, at least at the Rule 12 stage, have to be believed as being unconventional because the complaint has those words in it. Is that required, that the statements in the complaint, assertions in the complaint, have to be supported by statements in the specification? It is not required that everyone map directly to the specification, but under the Iqbal-Twombly framework, the first thing the court does is look at what statements in the complaint, or even in the opposition here, could be dismissed or ignored because they are either conclusory or contradicted by the specification. So if they contradict something in the specification or are conclusory, they can be ignored. Right, and that's why I was pointing that out before, and that's why I'm wondering, is there in fact something that's contradictory to what they said? Yes, and I can go element by element for the ones that he listed for you, if I could. I'll start with, you asked about the pay table module, which they cite as one of the things that's being unconventional. They do that both in the complaint, at Appendix 136-37, and in their opposition below, at 410 and 413 in the appendix. What they don't do is cite to anything in the patent that explains how the pay table module and the claims is unconventional. They cite to three places in the specification that all describe the same functionality performed by the pay table that is also described in Column 2, and so that I would say is a contradiction, because in Column 2, the patent describes prior art gaming systems that used a mapping, a predetermined table, where a random number is pulled, it's mapped to the result in a table, and also to an image, and that image is presented. In Column 2, the patents tell you that is in the prior art, and when they tell you now that somehow calling it a centralized gaming server or a centralized pay table module is somehow different, there is nothing there, and instead they cite Columns 4, 10, and 13 in the patent that all describe that exact same pay table functionality, mapping the random number to a result and an image. The patent does not say anything about that being any kind of new or different functionality, and in fact, it contradicts the opposition at 413, where the patent owner has argued that it gives that ability to change the games. You can change one pay table, and it'll go out to all the terminals, and isn't that something? Again, not in the patent, just in the complaint, but that contradicts its own opposition where it admitted that some contradictions in the patent itself and even in their own opposition that show that this so-called unconventional pay table module was nothing than functionality the patents admit was known before. Similarly, for the unconventional quote-unquote transactional system that credits funds to a user account, this is also described in the patent in Column 9. It says that transaction data is protected by known cryptography, and that player credits are stored on the network so players don't have to carry money around. So to the extent there's something there in the transaction system, the patent itself says what it's doing is making it more convenient for the player. That is directly contradictory to something that the patent owner said in their opposition. They tried to say that no, no, the transactional system increases security, so bad actors cannot steal credits. Presumably, that's where they're going when they say secure and stable is this new thing, but that's not what the patent says. It says nothing about stopping people from stealing credits. It says making it easier so your players don't have to carry money around the casino. On the central gaming server, that really centralization and server are really the two things that they say are different than all of the gaming functionality that's admitted as being known in the patents. They say in their opposition, they don't have anything to point to in the patent that says that the server does anything other than generic computer functionality or that the centralization is somehow new. Centralized gaming long predates computers. If you think about a bingo hall where you have a single operator who is pulling the random numbers out of the spinny basket that cards all the players to make sure and verify that they're old enough to play, that calls out the results, maps the results, and pays out the winning. The idea of centralized gaming, and they're saying it has to be broader than slot machines, far predates computers. Nothing in the patent specification explains how those elements in the claims, how those provide any of these benefits that they argue are in that important sentence in the complaint. Isn't it just a simplistic idea to say that these complicated claims describe only the abstract idea of remotely playing a slot machine on a server? They have specific limitations. They do have some words in them besides those that you just said, but certainly if you look at other cases that this court has described, has looked at, often there is an underlying abstract idea and we have to look at the claims as a whole and what they are directed to and you look at the patent here tells you all of the gaming technology or all of the gaming functionality was known before. Random number generators, pay tables, they use off-the-shelf encryption, they use known security. Well the Supreme Court has gotten us away from claims into what used to be called the gist of the invention. No, well maybe somewhat. I mean we are we are trying to follow the Alice and Mayo. Those were unanimous and certainly that's what we're trying to do these days, but this court often looks at claims that have many steps, 10 or 12 steps, lots of words, and really what is the overall abstract idea. Would you say it's a point of novelty test? Excuse me? Would you say it's a point of novelty test? No, I mean I think we have enough from the Supreme Court and this court to say that novelty and routine and conventional are different. 102 is not 101, so I wouldn't say it's a point of novelty. But in terms of figuring out what is the claim directed to? Is that a point of novelty test? I don't think so. I think it is, it's not clear what it is and when the court has found it difficult to say exactly what it is, then the court often will turn to step two and look, because there you do have more of the routine and conventional, what is being added besides the abstract. Well, haven't we said that when we try to figure out what is the claim directed to, we look at what the purported claimed advances over the prior are? Yes, I guess that's a point of novelty inquiry for what is the claim directed to. Okay, and in that case, they talk about the fact that in the patent, in the background, the patent is talking about making all of this known gaming functionality available in an open network. They don't exactly say what that is, but that seems to be what they're getting at, and certainly, in their arguments, they're saying we added a centralized server, and that changes everything. At most, it's moving remote gaming to a server. The district court found remote slot machine on a server. I think if you look at some of the court's cases that have found eligibility, that in particular, BASCOM and CosmoKey, both of which were mentioned by the patent owner, I think those make clear what is missing here, and that is that there is nothing in the specification at step one that explains a solution. This isn't like some of the things that have been patentable, like the filtering in BASCOM, where the problem was a technical problem that was caused by the involvement of computers. We don't have anything like that. Here, the patents explain all of the prior art. They say networked interactive gaming was already known even on the internet, and they talk about prior art pay tables, and all of the gaming functionality was there. What they are trying to argue now, with very little support in the spec, is that somehow putting it on a server makes it work differently. That's where I point you to CosmoKey, because the reason they say that matters is that it makes it possible, reduces the hardware requirements on the user device, on the game device. Well, there's nothing in the patent that says that user devices do anything other than be conventional user devices, TVs and set-top boxes and phones. They don't have anything in the specification that would explain why that somehow is a technical improvement, unlike the case in CosmoKey, where the specification specifically addressed the challenges of authenticating a transaction when a user has a limited mobile device. They said there's a way we have figured out to reduce the burden on that device by performing these four specific steps in the authentication process. That allows for the mobile device to have less memory and less demand. That's what they're trying to say here, but there's nothing in the claims or specification that explains that link. In CosmoKey, there were four specific steps in the claims that were discussed in the specification, and the specification gave the how, explained why those four steps resulted in the result of reducing the burden on the user device. They can't point to anything about that here for the user device. Representative claims. Representative claims. They're appropriate. They're used regularly. Here, not only did we rely, or the district court relied, on the admission that the patent owner mentioned, but also in the motions to dismiss, there were two of them, and they both explained specifically why the claim that was described, claim one of the 229 or 407, why it was representative. The platique of motion had a chart explaining why it represented and how substantially similar it was to the other claims. Then they also addressed all of the dependent claims. In their opposition, besides just that footnote, the patent owner did not argue against any of that explanation of why they were representative. They did not argue against any of the dependent claims. Where that has not been separately argued, it's appropriate to use that representative claim analysis. I would point to, for example, content extraction, where 242 claims across four patents were invalidated when they shared the same spec. The claims were substantially similar and linked to the same idea. If there are no further questions, let me just make sure the other elements that he mentioned. As for the secure stable allegations in the complaint, I would point you to the contradictory statements in the patent at columns one and two, where the patent describes specifically using traditional security methods and that security methods were known techniques, including the ones that the opposition points to, passwords, IDs, and biometrics. As far as improved reliability, that contradicts column two, which explains that reliability in gaming systems came from known cryptography and digital certificates. While the specification doesn't have to have everything to your question, Judge Tenet can't contradict what they are saying without any support. With the ability to disregard those statements, the district court properly dismissed at rule 12 because anything they could argue wouldn't change the outcome on eligibility. I'm happy to answer any other questions. I think you have concluded. I have, unless there are questions. No. Thank you. We'll bring Mr. Ladon back. Front and center. Please proceed. Thank you, Your Honor. First, I want to hit head-on the statements by counsel that what was pled in the specification of paragraph five isn't supported by the spec. If you go back to appendix 136, it talks about a central gaming server. That's in column 940, line 41 through 67 of the 229 package. It then talks about a verification system, server, excuse me, column 7, line 19 through column 9, line 41. It talks about an image and or video delivery component. Column 10, line 21 through 35. Column 4, line 64 through 67. Paragraph 6, the pay table module. That is defined column 9, 59 through 62. Column 10, 57 through 64. Column 13, 4 through 8. Column 4, 61 through 62. Column 10, 11 through 13. Column 13, line 24 through 26. And in paragraph 7, the transactional system. Column 10, line 65 through column 11, line 9. There's nothing in that passage of the complaint that isn't supported by the specification. And there's nothing in the case law that I'm The patents need not articulate all the benefits of the invention. The last point I want to make is, before my time is up, we think this case should be reversed and remanded and let my client, NexRF, move forward with this case. But at a minimum, at a minimum, the district court also erred in denying that Denying NexRF leave to amend this complaint. And that was based on its utility analysis, and I don't believe that was accurate. Here, you know, NexRF was denied the benefit of this ruling to see the ability, whether there was an amendment necessary to determine the possible means of curing their deficiency. And for that reason alone, they should, at a minimum, be granted leave to file an amendment complaint. With that, Your Honors, I have no further comments, and I'm happy to answer any questions you might have. Thank you, counsel. The case will be taken under submission.